**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**Case No.: 2:26-cv-02044-KCD-KRH**

PATRICK KILMER and ELIZABETH SCHLEY,
on behalf of themselves and all others
similarly situated,

Plaintiffs,

vs.

NEWSBANK, INC.,

Defendant.
_____________________________________________/

**DEFENDANT NEWSBANK INC.'S**
**MOTION TO DISMISS THE COMPLAINT**
**FOR LACK OF STANDING AND FOR FAILURE TO STATE A CLAIM;**
**AND, MOTION TO STRIKE**

Defendant, NEWSBANK INC., by undersigned counsel, files this Motion to Dismiss the Complaint for Lack of Standing and Failure to State a Claim, pursuant to Fed. R. Civ. P. 12(b)(1) and (6); and, Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

## I. INTRODUCTION AND STATEMENT OF REQUESTED RELIEF

This is a data breach case. DEFENDANT NEWSBANK INC. had its computer system hacked and personal information regarding DEFENDANT'S employees and former employees may have been accessed and viewed. This data breach occurred **over two years ago**; but, there are no factual allegations

that any of the employees or their beneficiaries have been injured or damaged, such as by having their identities stolen or credit cards or loans opened in their names. Rather, PLAINTIFFS **assume** and **speculate** that their private and personal information **may** cause injuries in the **future**. However, for standing purposes, such **speculation premised on assumptions** is not good enough. Consequently, as set forth below, this case must be dismissed because PLAINTIFFS have not satisfied their burden of establishing standing to prosecute this matter.

## II. ALLEGATIONS OF THE COMPLAINT

The Class Action Complaint ("Complaint") is over 40 pages and contains almost 150 paragraphs; accordingly, below is a summary of the core allegations.

1. PLAINTIFF PATRICK KILMER is a citizen and resident of Viginia, and is the spouse and beneficiary of PLAINTIFF ELIZABETH SCHLEY. **Complaint ¶¶18, 68.**

2. PLAINTIFF ELIZABETH SCHLEY is a citizen and resident of Virgina, and is a former employee of DEFENDANT. **Complaint ¶¶19, 77.**

3. DEFENDANT NEWSBANK INC. is allegedly a Florida corporation with its principal place of business in Florida. **Complaint ¶20.**[1] DEFENDANT is the premier provider of the world's largest repository of reliable information.

[1] Actually, DEFENDANT is a Delaware corporation.

**Complaint ¶2.**

4. DEFENDANT collected personally identifiable information ("PII") from its employees, such as names, dates of birth, Social Security Numbers, passport numbers, driver's license numbers, financial account information, and health insurance information. **Complaint ¶¶1, 11, 27, 30-31, 78.**

5. On or before July 1, 2024, DEFENDANT became aware of a data breach involving its network, whereby an unauthorized actor hacked into certain files and data. **Complaint ¶3.**

6. In August 2024, reports surfaced that the Rhysida Group cyberattacked DEFENDANT. **Complaint ¶5.** Allegedly, the Rhysida Group published on the dark web Social Security numbers, Social Security cards, passports, driver's licenses, tax forms, confidential employee files, and photos acquired during the data breach. **Complaint ¶6.** [2]

7. On approximately January 16, 2025, DEFENDANT sent a letter to PLAINTIFFS indicating that in approximately June and July 2024, DEFENDANT experienced a data breach. The information that was potentially impacted were names and dates of birth, Social Security numbers, passport numbers, financial

[2] The type of information allegedly hacked and stolen is inconsistently alleged throughout the Complaint. In some places, it includes tax forms, confidential employee files, and photos. **Complaint ¶¶6, 7.** In another allegation, there is no mention of tax forms, Social Security cards, confidential employee files, or photos. **Complaint ¶1. <u>These allegations may have been cut and pasted from complaints in other cases</u>**. This Motion will focus on the alleged information hacked from the named PLAINTIFFS: names, date of birth, Social Security Number, driver's license number, and, financial account information – **<u>although the type of financial account information is unknown</u>**.

account information, and health insurance information. **Complaint ¶30.**

8. Allegedly, the stolen PII **"may"** end up for sale on the dark web or fall into the hands of companies that will use the PII for targeted marketing. **Complaint ¶34.**

9. However, inconsistently, the Complaint alleges that the PII of PLAINTIFF KILMER "was acquired by a cybercriminal." **Complaint ¶70.** But, there is no indication as to how PLAINTIFFS know the PII was acquired by a cybercriminal or the identity of the cybercriminal, among other things.

10. Next, inconsistently, the Complaint alleges that the PII of PLAINTIFF SCHLEY was also "acquired by a cybercriminal and published on the dark web, including her I-9 form containing her Social Security number." **Complaint ¶79.** But, again, there is no indication as to how PLAINTIFFS know the PII was acquired by a cybercriminal, the identity of the cybercriminal, or that it was published on the dark web, among other things.

11. Furthermore, **there are no allegations that PLAINTIFFS had their identities stolen or that any fraudulent accounts, credit cards, loans, or anything else had been opened or obtained in their names.**

12. Regarding the named PLAINTIFFS:

- PLAINTIFF KILMER suffered lost time, annoyance, interference, inconvenience, anxiety, and increased concerns for the loss of his privacy, **Complaint ¶74;**
- PLAINTIFF SCHLEY spent time dealing with the

consequences of the data breach; and, thus, suffered lost time, annoyance, interference, inconvenience, anxiety, and increased concerns for the loss of her privacy, **Complaint ¶83;** and,

- PLAINTIFFS "suffered imminent and impending injury arising from the substantially increased risk [of] misuse resulting from their PII being placed in the hands of unauthorized third parties and **possibly** criminals." **Complaint ¶¶75, 84.**[3]

13. Based on the allegations set forth above, PLAINTIFFS brought the following claims against DEFENDANT: (1) Count I: Negligence; and, (2) Count II: Breach of Implied Contract.

14. Within Count I alleging Negligence, PLAINTIFFS allegedly **"have suffered and will suffer injury"** as follows:

- **Actual** identity theft;[4]
- The loss of the opportunity of how their PII is used;
- The compromise, publication, and/or theft of their PII;
- Out of pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII;
- The lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to

[3] As recently discussed by a Florida federal court, "describing a risk simply by using the words such as actual, current, present, ongoing, continuing, probable, imminent, immediate, or substantial is **inadequate to plead an injury in fact**." Baker v. Akumin Corp., 2024 WL. 1931480 *5 (S.D. Fla. April 16, 2024) (report and recommendation).

[4] Again, there are no allegations that any PLAINTIFF has experienced **actual identity theft.** Accordingly, this is an unsupported **conclusory allegation** which thus can be ignored by the Court. It may have been cut and pasted from another complaint.

mitigate the actual and future consequences of the data breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft;

- The costs associated with placing freezes on credit reports;

- The continued risk to their PII; and,

- The future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the data breach.

**Complaint ¶128.**

14. Within Count II alleging Breach of Implied Contract, PLAINTIFFS allegedly **"have suffered (and will continue to suffer)"** as follows:

- The threat of the sharing and detrimental use of their confidential information;

- The ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse;

- The loss of the confidentiality of the stolen confidential data;

- The illegal sale of the compromised data on the dark web;

- The expenses and/or time spent on credit monitoring and identity theft insurance;

- The time spent scrutinizing bank statements, credit card statements, and credit reports;

- The expenses and/or time initiating fraud alerts, decreased credit scores and ratings; and,

- Lost work time.

**Complaint ¶138.**

15. Finally, PLAINTIFFS also seek to recover for anxiety, emotional distress, and the loss of privacy. **Complaint ¶129.**

## III. MOTION TO DIMISS – LEGAL STANDARD

On a motion to dismiss, the court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). All reasonable inferences are interpreted in favor of the plaintiff. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). However, a court is not bound to accept as true a **legal conclusion** couched or masquerading as a factual allegation. Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, "plaintiff's obligation to provide the grounds of his entitlement to relief **requires more than labels and conclusions**, and **a formulaic recitation of the elements of a cause of action will not do**; **factual allegations** must be enough to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## IV. ARGUMENT AND ANALYSIS OF LAW – MOTION TO DISMISS

As set forth below, the Complaint must be dismissed because PLAINTIFFS failed to establish standing to prosecute this matter because PLAINTIFFS have no basis to conclude that an injury or damage **actually occurred or is imminent.** Rather, PLAINTIFFS premised their alleged injuries on pure speculation that because PLAINTIFF KILMER'S PII was "acquired by a cybercriminal"

**(Complaint ¶70)** and PLAINTIFF SCHLEY'S Social Security number was **"published"** on the dark web (**Complaint ¶79)**, their PII will **actually be purchased by someone** and that **actual identity theft** – such as obtaining a credit card or a loan – will occur at **some unknown future date**.

But, this is all speculation.

Indeed, it has been **over two years** and no such identity theft has occurred.

PLAINTIFFS forward **no factual allegations that identity theft has actually occurred or that their PII has been used to obtain a credit card or loan, or anything.** Finally, certain aspects of the Complaint must be stricken as a matter of law as set forth in the Motion to Strike.

**A. The Complaint Must be Dismissed because PLAINTIFFS Failed to Establish Standing.**

PLAINTIFFS do not have standing to prosecute this matter because PLAINTIFFS do not know if their PII was actually misused – i.e., **PLAINTIFFS have not suffered an "injury in fact" for standing purposes**. Rather, PLAINTIFFS allege – apparently, upon **"information and belief"**[5] – that the PII of PLAINTIFFS was "acquired by a cybercriminal" **(Kilmer, Complaint ¶70),** and, was **"published"** on the dark web **(Schley, Complaint ¶79).**

---

[5] In the opening paragraph of the Complaint (above the "Introduction" section), PLAINTIFFS admittedly make allegations based upon **"information and belief."** But, PLAINTIFFS do not set forth which allegations are based on "information and belief" – i.e., what qualifies as "their own actions" and "counsels' investigation"? **As will be discussed, for standing purposes, "information and belief" is not good enough.**

But, PLAINTIFFS have **no idea if their PII was actually sold or purchased** by anyone. That is why PLAINTIFFS alleged an "imminent and impending" "substantial[] increased risk" of misuse if their PII gets in the hands of criminals – which, **has not yet happened for over two years. Complaint ¶¶75 (Kilmer), 84 (Schley).** Again, there are no factual allegations that any PLAINTIFF has incurred **actual** identity theft or **any other type of financial harm**. As set forth in the case law below, DEFENDANT asserts that PLAINTIFFS' **belief** – which is premised on an **assumption** – is not good enough to qualify as an "injury in fact" or actual, concrete, harm for standing purposes; nor, does it qualify as a "substantial risk" or "certainly impending" risk of **future** injury.

**(1) The Law of Standing**

When a complaint is attacked for lack of standing, the allegations of the complaint are taken as true. McElmurray v. Consol. Gov't of Augusta-Richmond Cty., 501 F.3d 1244, 1251 (11th Cir. 2007). Under Article III of the Constitution, the jurisdiction of a federal court is limited to "cases" and "controversies." Wilding v. DNC Servs. Corp., 941 F.3d 1116, 1124 (11th Cir. 2019), cert. denied, 140 S.Ct. 2828 (2020). To satisfy the "case" or "controversy" requirement, a plaintiff must have standing to sue. See Spokeo, Inc. v. Robins, 36 S.Ct. 1540, 1546-47 (2016). And, for a plaintiff to have standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

Id. at 1547 (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). A plaintiff at the pleading stage . . . bears the burden of establishing these elements by alleging facts that "plausibly" demonstrate each element. Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996 (11th Cir. 2020).

Regarding the first element of standing, at the pleading stage, "general factual allegations of injury" are enough. Lujan, 504 U.S. at 561. But, a plaintiff must set forth general factual allegations that **"plausibly and clearly allege a concrete injury,"** Thole v. U. S. Bank N.A., 140 S.Ct. 1615, 1621 (2020), and that injury must be **"'actual or imminent, not conjectural or hypothetical,'"** Spokeo, Inc., 136 S.Ct. at 1548. **"[M]ere conclusory statements[] do not suffice."** Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Regarding the "concrete" injury, in Spokeo, the U.S. Supreme Court offered a straight-forward definition: "A concrete injury must be de facto; that is, it must **actually** exist." Spokeo, Inc., 136 S.Ct. at 1548. The Supreme Court noted that when it uses the term "concrete," it intends to "convey the usual meaning of the term—'real,' and not 'abstract.'" Id. Typically, tangible injuries are "concrete." See Trichell, 964 F.3d at 997. Tangible injuries can include both straightforward economic injuries, see Debernardis v. IQ Formulations LLC, 942 F.3d 1076, 1084 (11th Cir. 2019), and more nebulous injuries, like lost time, see Salcedo v. Hanna, 936 F.3d 1162, 1173 (11th Cir. 2019). But, although many types of injuries may qualify as "concrete," "[w]here a 'hypothetical future harm' is not

'certainly impending,' plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves.'" Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 931 (11th Cir. 2020) (en banc) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 416 (2013)).

This raises the second question: When is an injury "actual or imminent" and not just "conjectural or hypothetical?" "[T]hreatened injury must be **certainly impending** to constitute injury in fact, . . . [a]llegations of **possible** future injury are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)). While this standard does not require a plaintiff to show that it is "literally certain that the harms they identify will come about," it, at the very least, requires a showing that there is a **"substantial risk"** that the harm will occur. Id. at 414 n.5.

**(2) Data Breach Cases and Standing in the Eleventh Circuit**

The Eleventh Circuit's decision in the data breach case of Tsao v. Captiva MVP Restaurant Partners LLC, 986 F.3d 1332 (11th Cir. 2021), was rendered on **February 4, 2021**. The case concerned the theft of credit card information via a data breach. Id. at 1334. The plaintiff argued that he had standing to pursue the action because (1) he **"could"** suffer **future** injury for misuse of the information, including **identity theft** – although, **no misuse had yet occurred**; and, (2) he has already suffered injury due to lost time, lost reward points, and loss of access to accounts. Regarding the plaintiff's first argument of **potential future injury**, the

Eleventh Circuit disagreed:

> **we remain unconvinced that Tsao has met his burden to show that there is a "substantial risk" of harm, or that such harm is "certainly impending."** [citation omitted]. Three considerations color this conclusion.
>
> First, we recently held in **Muransky** that conclusory allegations of an **"elevated risk of identity theft"**—or, as Tsao puts it, a "continuing increased risk" of identity theft—**"[are] simply not enough" to confer standing.** [citation omitted].
>
> * * *
>
> Second, Tsao offers only vague, conclusory allegations that members of the class have suffered any actual misuse of their personal data—here, **"unauthorized charges."** But again, **conclusory allegations of injury are not enough to confer standing.** [citation omitted].
>
> * * *
>
> As the case law discussed above confirms, most plaintiffs that have failed to offer at least some evidence of **actual misuse** of class members' data **have fared poorly in disputes over standing.**
>
> Third, Tsao immediately cancelled his credit cards following disclosure of the PDQ breach, effectively eliminating the risk of credit card fraud in the future. Of course, even if Tsao's cards are cancelled, **some risk of future harm involving identity theft (for example, the use of Tsao's name) still exists, but that risk is not substantial and is, at best, speculative.**
>
> * * *
>
> **Evidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing**. It follows that Tsao does not have standing here based on an "increased risk" of identity theft.

Id. at 1343-44. As for the plaintiff's next argument, interpreted by the Eleventh Circuit as a mitigation of risk of future identity theft, the plaintiff fared no better:

> It is well established that **plaintiffs cannot manufacture standing merely by inflicting harm on themselves** based on their fears of **hypothetical future harm** that is not certainly impending.

Id. at 1344. Accordingly, no standing was present.

A few months later in **June 2021**, the Eleventh Circuit decided In re Equifax Inc. Customer Data Security Breach Litigation, 999 F.3d 1247 (11th Cir. 2021), cert. denied, 142 S.Ct. 431 (2021). This case concerned the data breach of 150 million Americans; personal information was stolen, such as Social Security numbers, names, dates of birth, addresses, and other information. Id. at 1257.

Here, the Eleventh Circuit concluded that the plaintiffs who had **not** yet had their individual identities stolen did in fact have standing because of the nature of the information stolen, **coupled** with the fact that **some other plaintiffs had already had their identities stolen**. Id. at 1262. Thus, **"actual identity theft"** had **already occurred** in this case. Id. at 1263. Further, because **actual identity theft** had already occurred, the Eleventh Circuit concluded that the time and money spent mitigating future identity theft also qualified as "injury in fact" for standing purposes. Id. at 1263.

Next, in **July 2023**, the Eleventh Circuit further explained the requirement of standing in data breach scenarios in the case of Green-Cooper v. Brinker Int'l Inc., 73 F.4th 883 (11th Cir. 2023), cert. denied 144 S.Ct. 1457 (2024). In Green-Cooper, credit and debit card information was stolen from customers of a restaurant chain. Id. at 886. Initially, the Eleventh Circuit summarized its holding

in Tsao – discussed above:

> We said in Tsao that a plaintiff whose personal information is subject to a data breach can establish a concrete injury for purposes of Article III standing if, as a result of the breach, he **experiences "misuse" of his data in some way**. [citation omitted]. We typically **require misuse** of the data cybercriminals acquire from a data breach because such misuse constitutes both a "present" injury and a "substantial risk" of harm in the future. [citation omitted].

Id. at 889. Next, the Eleventh Circuit concluded that this **actual misuse** is what gives the plaintiffs standing because it qualified as both a **present injury** and a **substantial risk of future injury:**

> **All three plaintiffs** maintain that their credit card and personal information was **"exposed for theft and sale on the dark web." That allegation is critical**. The fact that hackers took credit card data and **corresponding** personal information from the Chili's restaurant systems and **affirmatively posted** that information for sale on Joker Stash is **the misuse** for standing purposes that we said was missing in Tsao. And it establishes both a present injury—credit card data and personal information floating around on the dark web—and a substantial risk of future injury—future misuse of personal information **associated with** the hacked credit card. We hold that this is a concrete injury that is sufficient to establish Article III standing.

Id. 889-890.

But, importantly, notice the Eleventh Circuit focused on the fact that the PII was posted with the **"corresponding"** credit card data. In other words, the names (and other PII) were **posted alongside** the **"corresponding"** credit card data – thus, **making the theft very easy to accomplish.** The significance of posting the PII alongside the **"corresponding"** financial information was also

recognized by the U.S. Court of Appeals for the Third Distrct – because **posting financial information alone is meaningless:**

> Further, courts consider whether the nature of the information accessed through the data breach could subject a plaintiff to a risk of identity theft. [citation omitted]. * * * By contrast, the disclosure of financial information alone, **without corresponding personal information**, is insufficient. [citations omitted]. **This is because financial information alone generally cannot be used to commit identity theft or fraud**. [citation omitted].

Clemens v. Execupharm Inc., 48 F.4th 146, 154 (3rd Cir. 2022). Here, **there are no allegations that the PII was posted alongside "corresponding" financial or other information that would make identity theft much more likely.**

(**3**) **The Data Breach was Over Two Years Ago – yet, Nothing**

Federal courts have recognized the importance of the passage of time without any actual identify theft:

> **Plaintiffs' inability to identify any consequences of the data breach reinforces that conclusion. More than a year after the breach, Plaintiffs cannot point to a single instance of identity theft** affecting any of the 900,000 members of the putative class. By comparison, the Remijas plaintiffs alleged that thousands of shoppers had reported **fraudulent charges** on their credit card statements. [citation omitted]. * * * * **Ultimately, Plaintiffs' failure to describe any "fallout" underscores the relatively minimal danger posed by the data breach.**
>
> * * *
>
> In short, **Plaintiffs' theory fails because the disclosed data is not sensitive enough to materially increase the risk of identity theft. That none of the affected students seems to have suffered adverse consequences from the breach confirms this diagnosis . . . .**

Kylie S. v. Pearson PLC, 475 F.Supp.3d 841, 847-848 (N.D. Ill. July 28, 2020);

> And as Defendant aptly notes, **it has been two years since the security breach and yet, there are no allegations of actual misuse.** [citation omitted]. Instead, **Plaintiffs merely allege that [Redacted] has "all the information it needs ... to sell the data on the Dark Web," but not that it, or any other third party, has sold the information.**

In re Samsung Data Security Breach Litigation, 761 F.Supp.3d 781, 795 (D.N.J. Jan. 3, 2025).

Again, here, it has been over two years and not a single former or current employee (or their beneficiaries) has been the subject of identity theft. There has been no fraudulent accounts, loans, or charges of any kind reported by anyone.

**(4) The Allegations of this Case**

***(a) No "Actual" Misuse of the PII***

PLAINTIFFS have not plead **"actual misuse"** of the PII; thus, PLAINTIFFS have no standing. That is, PLAINTIFFS are attempting to allege standing based primarily on Green-Cooper, discussed above. Specifically, PLAINTIFFS allege – on **"information and belief"** – that the PII of PLAINTIFFS was "acquired by a cybercriminal" **(Kilmer, Complaint ¶70),** and, was **"published"** on the dark web **(Schley, Complaint ¶79).** But, unlike the Green-Cooper case, there are no allegations that the PLAINTIFFS' PII was posted alongside **"corresponding"** financial information:

> **All three plaintiffs** maintain that their credit card and personal information was **"exposed for theft and sale on the dark web."**

> **That allegation is critical**. The fact that hackers took credit card data and **corresponding** personal information from the Chili's restaurant systems and **affirmatively posted** that information for sale on Joker Stash is **the misuse** for standing purposes that we said was missing in Tsao. And it establishes both a present injury—credit card data and personal information floating around on the dark web—and a substantial risk of future injury—future misuse of personal information **associated with** the hacked credit card.

Green-Cooper, at 889-890;

> By contrast, the disclosure of financial information alone, **without corresponding personal information**, is insufficient. [citations omitted]. **This is because financial information alone generally cannot be used to commit identity theft or fraud**. [citation omitted].

Clemens v. Execupharm Inc., 48 F.4th 146, 154 (3rd Cir. 2022). Accordingly, PLAINTIFFS do not fall within the factual scenario of Green-Cooper due to the fact that **"corresponding"** financial information was not posted side-by-side.

Thus, PLAINTIFFS have not established standing.

Next, although it is not clear, PLAINTIFFS may be making this allegation based on **"information and belief**." In fact, PLAINTIFFS may be **assuming** that their PII will be sold on the dark web because that is how cybercriminals behave;[6] but, because this allegation is based on "information and belief," PLAINTIFFS have no concrete or actual information that such an event even occurred or that an "injury-in-fact" ensued:

---

[6] If this assumption were enough to establish standing, **every** person in **every** data breach case would have standing because this assumption would apply to **everyone**. But, such an outcome is contrary to the Eleventh Circuit's position that: "**[e]vidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing**." Tsao, at 1344.

> Furthermore, in the **highly unusual case** in which a plaintiff pleads an injury on **information and belief**, such as here, the concern is not merely whether the plaintiff has adequately pleaded a necessary element of its claims, **but whether it has even suffered a "concrete and particularized" injury necessary to confer standing.**

Street v. Amazon.com Services LLC, 2022 WL 3683811 *3 (W.D. Wash. Aug. 25, 2022).[7]

Indeed, pleading a critical allegation or fact based on "information and belief" is sometimes acceptable in certain situations; but, this is not one of them. That is, generally, there are two acceptable scenarios: (1) where the information is not available to the plaintiff because it is in the possession of the defendant, see e.g. American Hospice Inc. v. Sebelius, 2010 WL 9013005 *4 fn.7 (N.D. Ala. Jan. 27, 2010); and, (2) where the information could only be obtained via discovery, see e.g. Zausner Food Corp. v. Blandin, 2023 WL 5289238 *4 (S.D. Fla. Aug. 16, 2023).

Here, the information necessary to support the above allegations is not in the possession of DEFENDANT and if such an event really occurred,

---

[7] As discussed by the Eight Circuit Court of Appeals, this type of allegation is unacceptable as pure speculation:

> Plaintiffs point to the allegations that, **on information and belief**, illicit websites are selling their Card Information to counterfeiters and fraudsters, and that plaintiffs' financial institutions are attempting to mitigate their risk. Not only are these allegations **speculative**, they also fail to allege any injury "to the plaintiff[s]."

In re Supervalu Inc., 870 F.3d 763, 769 (8th Cir. 2017) (citations omitted).

PLAINTIFFS should already have the supporting evidence. Thus, there should be no reason to plead such an allegation based on "information and belief." Accordingly, pleading this alleged misuse of PII based on "information and belief" is fatal to PLAINTIFFS' standing.

Furthermore, it is the **named** PLAINTIFFS that **must establish standing in their own name**; the alleged standing of hypothetical and unidentified class members is irrelevant. See e.g. Frank v. Gaos, 139 S.Ct. 1041 (2019); accord Lorenzo v. MillerCoors LLC, 2023 WL 6614120 *3 (S.D. Fla. Sept. 19, 2023) ("[A] **named plaintiff must personally have standing**; he cannot rely on hypothetical or absent class members that he purports to represent."); see also Muransky v. Godiva Chocolatier Inc., 979 F.3d 917, 924 (11th Cir. 2020) ("[A] district court is powerless to approve a proposed class settlement if no named plaintiff has standing."). Moreover, PLAINTIFFS have not established that there is a "substantial risk" or a "certainly impending" risk of such an injury for standing purposes. Consequently, PLAINTIFFS do not have standing.

***(b) Manufactured Standing***

Next, PLAINTIFFS assert that they and the class members will suffer harm in the future regarding costs, time, and efforts to protect their PII. **Complaint ¶¶71, (Kilmer), 80 (Schley), 128, 138.** But, these allegations are no different than the manufactured standing argument discussed above in Tsao – which was rejected by the Eleventh Circuit:

> It is well established that **plaintiffs cannot manufacture standing merely by inflicting harm on themselves** based on their **fears of hypothetical future harm that is not certainly impending.**

Tsao, at 1344. Accordingly, DEFENDANT asserts that PLAINTIFFS failed to establish standing premised on an **assumed and speculative future risk that may never materialize**.

**(5) Other Alleged Injuries to Attempt to Create Standing**

PLAINTIFFS set forth other alleged injuries to attempt to establish standing; but, as explained below, none of these alleged injuries qualify as an "injury in fact" to establish standing. Indeed, these alleged "injuries" are commonly asserted in data breach cases and routinely rejected by the courts around the country.

***(a) Lost Time, Lost Opportunity, and Out-Of-Pocket Expenses***

Both PLAINTIFFS allege lost time, lost opportunity, and incurred out-of-pocket expenses as an injury or damages. **Complaint ¶¶74 (Kilmer), 83 (Schley), 128.** But, these very same injuries were alleged and rejected in Tsao and other cases in an attempt to create standing:

> As a result of these mitigation efforts, Tsao claims that he has suffered three distinct injuries: (1) **lost opportunity** to accrue cash back or rewards points on his cancelled credit cards, (2) **costs associated** with detection and prevention of identity theft in **taking the time and effort** to cancel and replace his credit cards; and (3) restricted account access to his preferred payment cards. **Tsao's mitigation efforts are not enough to confer standing.**

Tsao, at 1344;

> Plaintiff's other allegations do not aid him in establishing standing. Plaintiff alleges that he suffered **"ascertainable losses in the form of out-of-pocket expenses" to mitigate the data breach**, . . . ." However, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." [citation omitted]. The majority of courts in data breach cases have held that **"the cost to mitigate the risk of future harm does not constitute an injury in fact** unless the future harm being mitigated against is itself imminent." [citation omitted]. Here, it is unclear what these out-of-pocket monetary losses were and how they are related, if at all, to the two fraudulent charges on Plaintiff's debit card. **Additionally, it does not appear that the risk of future harm being mitigated against is imminent. Thus, the cost to mitigate the risk is not sufficient to confer standing based on the Complaint's allegations.**

Torres v. The Wendy's Co., 195 F.Supp.3d 1278, 1284 (M.D. Fla. 2016).

*(b) Loss of or Invasion of Privacy*

Second, PLAINTIFFS assert an alleged loss or invasion of privacy.[8] **Complaint ¶¶74 (Kilmer), 83 (Schley).** But, PLAINTIFFS do not allege that their personal and individual information were revealed to the public or anyone; or, that any member of the public viewed PLAINTIFFS' private information. Nor, do PLAINTIFFS allege that DEFENDANT intentionally disclosed such information – rather, the information was stolen via the data breach.

---

[8] It appears that this asserted injury is an alleged injury to a more amorphous, broad, and, general personal right to privacy based on the alleged publication of private facts. That is, **PLAINTIFFS have not plead an invasion of privacy claim under Florida law**. Florida recognizes the tort of invasion of privacy in three independent scenarios; but, regarding the publication of private facts, the elements of the tort are: (1) a publication; (2) of private facts; (3) that are offensive; and, (4) are not of public concern. See e.g. Rothenberg v. Knight Swift Transp., 2023 WL 3511271 *2-3 (M.D. Fla. Feb. 7, 2023); see generally Allstate Ins. Co. v. Ginsberg, 863 So.2d 156 (Fla. 2003).

Accordingly, the alleged "invasion of privacy" does not qualify as an injury for standing purposes. See e.g. In re Practice First Data Beach Litigation, 2022 WL 354544 *7-8 (W.D. N.Y. Feb. 2, 2022) ("Indeed, **this theory of standing has been rejected in the data breach context** where, like in this case, plaintiffs have failed to demonstrate any concrete or particularized injury associated with the disclosure."), report and recommendation adopted, 2022 WL 3045319 (W.D. N.Y. Aug. 1, 2022); C.C. v. Med-Data Inc., 2022 WL 970862 *10 (D. Kan. Mar. 31, 2022) ("**Every data breach action** – whether the court has conferred or declined to confer standing – **involves a loss of privacy**[,]" **but that does not equate to standing**); Fernandez v. Leidos, 127 F.Supp.3d 1078, 1088 (E.D. Cal. 2015) ("Plaintiff has not alleged facts from which a plausible inference could be drawn **that anyone has viewed his PII** [] as a result of the Data Breach.").

***(c) Diminished Value of PII***

It is not clear whether PLAINTIFFS are claiming damages due to the loss of value to their PII. **Complaint ¶¶54, 128, 138.** In the event they are claiming such as an injury or damages, again, the courts around the country have also rejected this alleged injury for standing purposes, particularly where the plaintiff – like PLAINTIFFS here – fail to allege that they could sell their PII in an established market and fail to allege the before and after value of their PII, i.e., how much value did it lose? As noted by various courts:

> [D]istrict courts have been reluctant to find standing based solely on

> a theory that the value of a plaintiff's PII has been diminished. [citations omitted].
>
> * * *
>
> Although [Plaintiff] alleges that studies show that consumers ascribe specific dollar values to their PII, he does not specifically tie those allegations to him. [**Plaintiff] does not allege that he attempted to sell his PII**, that he would do so in the future, or that he was foreclosed from entering into a value for value transaction relating to his PII, as a result of Pandora's conduct.

Yunker v. Pandora Media Inc., 2013 WL 1282980 *3-4 (N.D. Cal. March 26, 2013); Taylor v. UKG Inc., 2023 WL 8291834 *7 (D. Mass. Sept. 15, 2023) (same). Accordingly, the "diminished value" of the PII does not confer standing upon PLAINTIFFS.

***(d) Anxiety and Emotional Distress***

PLAINTIFFS claim anxiety and emotional distress as injuries or damages. **Complaint ¶¶74 (Kilmer), 83 (Schley).** But, Florida follows the Impact Rule. The Impact Rule mandates that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from **physical injuries sustained in an impact**." Reid v. Daley, 276 So.3d 878, 880 (Fla. 1st DCA 2019), review denied 2020 WL 704894 (Fla. 2020).

Here, there is no allegation that PLAINTIFFS suffered a physical impact or a physical injury. Accordingly, pursuant to Florida's Impact Rule and to the extent PLAINTIFFS are alleging emotional distress as injuries or damages, such

are not available as a matter of law to PLAINTIFFS.[9]

## V. ARGUMENT AND ANALYSIS OF LAW – MOTION TO STRIKE

### A. PLAINTIFFS' Request for Attorney's Fees must be Stricken since there is no Statute or Contract Authorizing such Fees.

It is well settled that the prevailing party in litigation is not entitled to recover attorney's fees unless there is a statutory or contractual basis for the award. Price v. Tyler, 890 So.2d 246, 250 (Fla. 2004); see also State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 832 (Fla. 1993) ("This Court has followed the 'American Rule' that attorney's fees may be awarded by a court only when authorized by statute or by agreement of the parties."). Accordingly, since PLAINTIFFS fail to identify a statutory or contractual basis for attorney's fees, such request for fees must be stricken from the Complaint.

### B. Injunctive Relief is Not Available because there is No Basis to Allege that DEFENDANT'S Alleged Tortious Conduct is Likely to Continue – Indeed, this Involved the Theft of PII from a Data Breach, a Criminal Act by a Criminal Organization. Accordingly, Such Relief must be Stricken from the Complaint.

As alleged in the Complaint, PLAINTIFFS request injunctive relief. But, to be entitled to injunctive relief, the alleged tortious conduct must be likely to continue in the future. See Southam v. Red Wing Shoe Co. Inc., 343 So.3d 106, 112 n.2 (Fla. 4th DCA 2022) ("[A] person exposed to **a risk of future harm** may

---

[9] For a recent case discussing Florida's confusing history of the Impact Rule and for recent questions regarding the Impact Rule certified to the Florida Supreme Court, see Florida BC Holdings LLC v. Reese, 376 So.3d 109 (Fla. 6th DCA 2023), review granted, 2025 WL 368680 (Fla. Feb. 3, 2025).

pursue forward looking, junctive relief . . . ."), review denied, 2022 WL 16848677 (Fla. 2022); Equitrac Corp. v. DeLaney, 2009 WL 10667046 *5 (S.D. Fla. Aug. 31, 2009). Here, there is no basis to allege that a data breach is likely to occur in the future since it involved a criminal act by a criminal organization. Accordingly, DEFENDANT asserts that such alleged damages or relief must be stricken from the Complaint.

## VI. CONCLUSION

WHEREFORE, DEFENDANT requests that this case be dismissed for lack of standing and for the other reasons asserted above; and, additionally, that certain aspects of the case be stricken as argued above.

## CERTIFICATION UNDER PENALTY OF PERJURY REGARDING THE USE OF ARTIFICIAL INTELLIGENCE

Pursuant to the Court's Standing Order, I certify under penalty of perjury that no generative artificial intelligence (AI) was used in the drafting or preparation of this filing.

**Dated: July 31, 2026**

Respectfully submitted,

*/s/ Douglas A. Kahle*
Douglas A. Kahle, Esq.
Florida Bar No.: 0141194
E-Mail: dkahle@schwedpa.com
SCHWED KAHLE & KRESS, P.A.
11390 North Jog Road, Suite 102
Palm Beach Gardens, FL 33418
Telephone: (561) 694-0070
Facsimile: (561) 694-0057
*Attorneys for NewsBank, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on **July 31, 2026,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Douglas A. Kahle*
Douglas A. Kahle, Esq.
Florida Bar No.: 0141194
E-Mail: dkahle@schwedpa.com

**SERVICE LIST**

PATRICK A. BARTHLE II
Morgan & Morgan
Complex Litigation Group
Florida Bar No. 99286
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T: (813) 229-4023 F: (813) 222-4708
pbarthle@ForThePeople.com

RYAN D. MAXEY
Maxey Law Firm, P.A.
107 N. 11th St. #402
Tampa, Florida 33602
Telephone: (813) 448-1125
Email: ryan@maxeyfirm.com

*Counsel for Plaintiffs and the Class*

Via CM/ECF